### J. P. Leslie, Guardian, v. S. E. Elliott.

Decided June 29, 1901.

**1.—County Court—Guardianship—Allowance in Lieu of Exemption.**

The statute does not confer authority upon the county court while sitting in a guardianship case to set aside to minor children, out of the estate of a deceased person, the homestead or other exempt property, or make allowances in lieu thereof.

**2.—Consolidating Cases—Immaterial Error.**

A party can not complain of an order consolidating cases where he has not been injured thereby, his claim being wholly untenable.

**3.—Mortgage—Homestead—Estoppel.**

See the opinion for facts relative to a mortgage of separate property of the wife, formerly occupied as a homestead, and the mortgage made after the husband and wife had removed out of the State, held to create an estoppel good against the claims of minor children of the wife to whom she had devised the property.

**4.—Same—Remedy of Mortgagee—Decedent's Estates.**

Where a mortgagee of realty, the mortgagor having died, has presented, within the prescribed time, his claim to the administrator, and it has been rejected, his only remedy is by suit in the district court to establish and enforce his lien, and an order of the county court setting aside the property to minors in lieu of the statutory exemptions will not operate as a bar to such foreclosure suit where the mortgagee has not presented his claim to the administrator at the time such mortgage was made.

**5.—Same—Jurisdiction—Enforcement of Mortgage Lien—Decedent's Estate.**

Where a mortgagee of realty, seeking to protect and enforce his lien, was a party to a guardianship proceeding in the county court which was appealed to the district court and there consolidated with administration proceedings on appeal, and the district court entered an order establishing his lien and certifying its judgment to the county court for observance, such judgment was correct; and whether the district court had jurisdiction in that proceeding to determine whether the lien was superior to the rights of the minors is immaterial, since, if it had not, the issue can be settled in the county court when the mortgagee attempts to there have the property subjected to his lien.

**6.—Parties—Trustee—Objections Too Late.**

The fact that the trustee in a deed of trust was not made a party can not be taken advantage of where the question is not raised until after trial.

Appeal from Grayson. Tried below before Hon. Don A. Bliss.

*J. P. Leslie,* for appellant.

*F. B. Dillard,* for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—In February, 1893, Reynolds and wife deeded to their daughter, Mrs. Eula McMahon, an unimproved lot in the city of Sherman. Mrs. McMahon was then a widow, and was the mother of three minor children whose names were Madge, Monroe, and Lucile McMahon. In February, 1894, she was married to W. R. Williams. A part of the lot was sold, and the money derived from the sale was used in building a family residence on the unsold portion of the lot. Williams, together with his wife and the said children, lived on the lot from October, 1894, until March, 1897, when they removed to Shawnee, Okla. On April 15, 1898, Williams borrowed $1000 from Elliott, and secured the same by deed of trust on the said lot, his wife joining him both in the note and deed of trust. Mrs. Williams died on February 14, 1899. On March 11, 1899, J. P. Leslie, who had theretofore been appointed guardian of the estates of the said Madge, Monroe, and Lucile McMahon, duly qualified as such. On May 9, 1899, Elliott brought this suit in the District Court of Grayson County against Williams and the said guardian. He sought judgment against Williams for the amount owing on the said note, and a foreclosure against both Williams and the guardian. Williams made default. On October 2, 1899, the County Court of Grayson County on the application of the guardian, made an order in the said guardianship proceeding setting aside the lot in controversy for the use and benefit of the said minors in lieu of a homestead and as property and an allowance in lieu of a homestead and in lieu of exempt property, freed from all liens whatever. Elliott was a party to said application, and appealed from the order to the District Court. On October 17, 1899, the will of Mrs. Williams was duly probated, and Leslie was appointed administrator with the will annexed, and properly qualified. By the will the lot in controversy, which was all the property owned by Mrs. Williams, was devised to her minor children. On January 24, 1900, the County Court made an allowance to said minors in the administration proceeding similar to the allowance theretofore made in the guardianship case. Elliott was not made a party to this proceeding, and had verbal, but no legal, notice thereof. On February 20, 1900, Elliott presented his claim, in proper form, to the administrator, and it was rejected. On March 5, 1900, the District Court, on motion of Elliott, filed on February 14, 1900, entered an order consolidating the suit of Elliott against Williams and the guardian with the application of the guardian to have the lot in controversy set aside to the minors in lieu of exemptions, which application was being contested by Elliott, and which contest was then pending on appeal from the County Court. On the same day, Elliott, by amended

petition, made the administrator a party, and sought to have his claim established against the estate as a valid lien on said lot. On March 17, 1900, Leslie, as guardian, filed a motion, which was overruled, asking that the order of consolidation be set aside. The administrator does not appear to have complained of the order, but in his answer, filed December 7, 1900, pleaded a misjoinder of causes of action. The administrator and the guardian relied upon the same defenses. They contended that Elliott was not entitled to a recovery against them for the reasons (1) that the lot in controversy was the homestead of Williams and wife at the time the deed of trust was given, and (2) that the estate of Mrs. Williams was insolvent, and her minor children, not being otherwise provided for, were entitled to have the said lot set aside to them in lieu of exemptions, free from Elliott's lien, and they set up the said orders of the County Court made in the administration and guardianship proceedings as a final adjudication of the question. Elliott, by supplemental petition, pleaded an estoppel on the homestead issue, charging that Williams and wife, in order to secure the loan, represented to him that they were bona fide residents of Oklahoma, and that they did not intend to return to Texas, or to again use or occupy the lot as their homestead. A jury was impaneled to try the case, but after the evidence was closed the court directed a verdict for the plaintiff. Judgment was accordingly entered against Williams for the debt sued on, with a foreclosure of the lien created by the deed of trust, and against the guardian and administrator establishing the lien claimed by Elliott as a valid lien on the lot in controversy to secure the said debt, and certifying such judgment to the County Court for observance. The guardian and administrator have appealed from the judgment against them.

The statute confers authority on the county court, when acting in the administration of the estate of a deceased person, to set aside, out of such estate, to the widow and minor children, the homestead and other exempt property, or to make allowances, in the proper case, in lieu of such exemptions, but no such power is given to that court when sitting in a guardianship case. It follows, therefore, that the order made in the guardianship case herein was without effect, and that the District Court did not err, on appeal, in so holding. As the guardian was clearly not entitled to such order, he could not have been injured by the action of the District Court in consolidating his action with the suit of the plaintiff. No matter when or how his application was tried, the court was bound to deny the relief sought by him, so it is immaterial whether the order of consolidation was technical error. It appears that the administrator was made a party after the consolidation, and that he made no complaint until after verdict. Moreover, his rights are not shown to have been injuriously affected by the order.

On the issue as to whether the lot in controversy was the homestead of Williams and wife, it was shown, as above stated, that it was the actual homestead from October, 1894, to March, 1897, when Williams removed with his family to Shawnee, Okla. Since that time they have never

occupied the premises. They acquired no other homestead. They lived in a rented house at Shawnee from March, 1897, to August, 1898, when Mrs. Williams went to Dallas, Texas, where she died the following February. She went to Dallas to be with her mother, who lived there, as she was dying with consumption. Williams remained in Oklahoma until after his wife's death, except that he visited Dallas on that occasion. Soon after that event he returned to Texas and has lived at various places in the State, being now at Cooper. Williams is a cotton buyer, and was engaged in that business while in Oklahoma. He also bought an interest in a gin at Calvin, I. T., the money obtained from Elliott being used for that purpose. It was shown that he declared his intention of remaining there permanently. The deed of trust contained the following statement: "And we, W. R. Williams and Eula Williams, his wife, both state as a part of the consideration of the loan which this instrument is given to secure, and to induce S. E. Elliott to make said loan, that the above described property (the lot in controversy) is not our homestead; that we have left Texas and have permanently located in Oklahoma Territory, and we claim our home and have acquired our homestead in said Territory, and do not intend to return to Texas permanently, or to acquire a homestead in said State." After the note and deed of trust were executed and before the same were delivered or the money was loaned, Mrs. Williams sent to Elliott a letter or statement which reads thus: "We send you the deed of trust and note for $1000. I read and fully understand the deed of trust and note. I went before the officer and acknowledged the deed of trust, and was examined by him separately and apart from my husband, and the officer fully explained the instrument to me, and I signed same willingly for the purposes and consideration therein expressed, and I do not wish to retract it. The recitals in said instrument as to our homestead are true. My husband will direct you how to send the money, and you will please be governed as to that by his instructions." Written statements by Williams of similar import were produced. Elliot and his attorney, who negotiated the loan for him, testified that they believed and relied on the recitals in the trust deed and on the said statements and were thereby induced to make the loan. There was no attempt to impeach or contradict them. We are of opinion that the evidence conclusively establishes the estoppel pleaded by Elliott, even if it is not sufficient to show beyond controversy that the lot was not, in fact, the homestead of Williams and wife. The trial court was therefore warranted in giving the peremptory instruction to the effect that the note and deed of trust created a valid lien on the property embraced in the deed. The administrator not only did not offer evidence in defense of the estoppel, but did not even plead any matter in avoidance thereof. Haswell v. Forbes, 8 Texas Civ. App., 87; Mortgage Co. v. Norton, 71 Texas, 687; Bank v. Gregory, 59 S. W. Rep., 622.

Elliott's claim having been duly presented and rejected, his only remedy was by suit in the proper court to fix and establish his claim

and lien. The amount of the claim and the nature of the lien made it necessary for him to sue in the District Court.

The order of the County Court setting aside the property in controversy to the minors as an allowance in lieu of exemptions, which was entered in the administration case, will not operate as a bar to plaintiff's suit. At the time the order was entered. Elliott had not presented his claim to the administrator for allowance. Within the time fixed by law he did present his claim, and it was rejected. This action of the administrator forced him to bring this suit in the District Court to establish his claim as a lien against the lot in controversy. It is immaterial whether the District Court had jurisdiction, on the trial of this case, to determine the question as to whether the Elliott lien was superior to the rights of the minors to an allowance. If it had such jurisdiction and the judgment entered is conclusive on that question, then the judgment rendered was correct in law. Rev. Stats., art. 2053; Ford v. Sims, 93 Texas, 586; Fossett v. McMahon, 26 S. W. Rep., 979. If it had no such jurisdiction and the judgment herein entered is not conclusive of the issue, then the question can be settled in the County Court when Elliott attempts to have the lot subjected to his lien. In either event, the proper judgment has been rendered in this case.

We think it unnecessary to discuss the other questions raised. In the view we have taken of the law the evidence complained of, both that which was admitted and that which was excluded, becomes immaterial. The plaintiff's pleadings were sufficient to authorize the judgment entered. The judgment disposes of all the issues which could be determined by the District Court in this suit. The fact that the trustee in the deed of trust was not made a party can not be taken advantage of where the question is not raised until after trial.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.