WESTERN UNION TELEGRAPH CO. v. MORROW et al. (No. 1445.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 8, 1919. Rehearing Denied Feb. 5, 1919.)

1. ACTION ⬅⟫50(3)—JOINDER OF CAUSES — PARTIES INVOLVED.

Where the brother of two sisters as their agent sent a telegram announcing their father's fatal illness, *held*, that it was not improper, the cause of action being the same, for the two sisters to join in a suit for damages for delay in delivery which precluded their attendance at the funeral.

2. APPEAL AND ERROR ⬅⟫1170(4)—REVIEW—HARMLESS ERROR.

Plaintiffs' joinder in an action against a telegraph company for delay in the delivery of a message *held* no ground for reversal under Rule 62a for the Courts of Civil Appeals (149 S. W. x), the company not having been harmed.

3. APPEAL AND ERROR ⬅⟫1039(2) — HARMLESS ERROR—PLEADING.

In an action for delay of death message, where plaintiffs alleged that had message been promptly delivered they could have reached place of funeral by use of railway facilities, failure to set out lines of transportation *held* harmless, if erroneous.

4. APPEAL AND ERROR ⬅⟫1039(13)—HARMLESS ERROR.

In an action for delay of death message, where plaintiffs alleged that had message been promptly delivered they could have reached place of funeral by use of railway facilities, admission of evidence as to railway facilities, though same were not set out, *held* harmless.

5. TELEGRAPHS AND TELEPHONES ⬅⟫29—INTERSTATE COMMERCE ACT—REGULATIONS APPLICABLE.

Act June 18, 1910, amending Interstate Commerce Act (U. S. Comp. St. 1913, § 8563), so as to include telegraph companies as common carriers, did not extend to such companies inapplicable regulations designed to govern carriers of different character.

6. TELEGRAPHS AND TELEPHONES ⬅⟫54(7) — NONDELIVERY OF MESSAGE — INTERSTATE COMMERCE ACT.

Stipulation on back of telegraph blank as to damages for nondelivery *held* not binding in Texas, it not appearing plaintiffs had any notice, as required by Interstate Commerce Act, of any such regulation.

7. PRINCIPAL AND AGENT ⬅⟫175(1) — AUTHORITY OF AGENT.

That plaintiffs' brother was their agent to notify them of father's fatal illness does not show he was their general agent and preclude recovery against telegraph company for delay of death message on ground that plaintiffs were bound by refusal of their brother, as their agent, to delay funeral, for a general agency cannot be implied from principal's acceptance of assumed agent's special act in one particular.

8. APPEAL AND ERROR ⬅⟫1066 — HARMLESS ERROR.

Where there is no question of contributory negligence in the case, error in an instruction on contributory negligence is harmless.

Appeal from District Court, Collingsworth County; J. A. Nabers, Judge.

Action by Dora Morrow and another and Lillie C. Kelley and another against the Western Union Telegraph Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Veale & Lumpkin, of Amarillo (Albert T. Benedict, of New York, of counsel), for appellant.

Small & Mahan, of Wellington, and Fires & Diggs, of Childress, for appellees.

⬅⟫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

HALL, J. Mrs. Dora Morrow, joined by her husband, R. E. Morrow, and Mrs. Lillie C. Kelley, joined by her husband, F. P. Kelley, appellees, instituted this suit in the district court of Collingsworth county against appellant, to recover in behalf of Mrs. Morrow and Mrs. Kelley $1,450 each, and the sum of 50 cents additional, which they alleged was the price paid for the transmission of the telegram. It is alleged that F. F. Foster, a brother of appellees, Mesdames Morrow and Kelley, residing at Waelder, Tex., delivered to appellant at said place the following message:

"Waelder, Texas, December 5, 1916, 9:35 A. M. R. E. Morrow, Wellington, Texas. Father much worse. Dora and Lillie come at once. F. F. Foster."

It is alleged: That, at the time said message was delivered to appellant's operator, said Foster informed the operator that W. H. Foster, his father, was then in a critical condition and was not expected to live more than a few hours, and that his daughters mentioned in the telegram, when apprised of this fact, would at once come to Waelder to be with their father during his illness and to attend the funeral in the event of his death. That by reason of the negligence and carelessness of appellant said message was never transmitted to Wellington, and as a direct and proximate result of such negligence they were deprived of the opportunity of being at their father's funeral. That had the message been properly transmitted and delivered they could and would have gone to Waelder, viewed his remains, and attended his funeral. Appellants answered that the message was sent under the terms of a special contract limiting the liability of appellant for its negligence; that the message was an interstate message, and was therefore governed by the Interstate Commerce Act approved June 18, 1910 (36 Stat. 539, c. 309). The case was submitted to the jury upon special issues, resulting in a judgment in favor of each of the appellees, Mesdames Morrow and Kelley, in the sum of $530.

[1, 2] The first assignment is that the court erred in overruling and not sustaining the appellant's exception to the petition upon the ground that it appeared therefrom that there is a misjoinder of parties plaintiff, for that it appears that each plaintiff has an independent cause of action against the defendant in no sense joint. Under this assignment it is insisted that any right of action accruing to Mrs. Morrow by reason of the negligence of appellant was a personal one, in which Mrs. Kelley had no interest and that Mrs. Kelley's right of action was likewise separate and distinct from that asserted by Mrs. Morrow. Appellant relies upon the case of Western Union Telegraph Co. v. Campbell, 36 Tex. Civ. App. 276, 81 S. W. 580, and Anderson v. Western Union Telegraph Co., 84 Tex. 17, 19 S. W. 285, to sustain its contention. In the Campbell Case it appears that R. P. Watson and his daughter Mrs. Minnie Campbell, before leaving Shreveport, La., wired the husband of Mrs. Campbell at Garrison, Tex., as follows: "Meet Minnie and self at train to-night." The telegram was never delivered to Campbell, who had left his own residence in the town of Garrison and gone to his father's residence about a mile and a half away to spend the night. It is alleged that a heavy rain fell in Garrison, causing the streets to be muddy, and that Mrs. Campbell and Watson were compelled to walk 250 yards from the depot to the Campbell residence, which they found locked, and they were forced to return through the mud and chill of the night air to a hotel. Damages in the sum of $950 were claimed for Mrs. Campbell, who it is alleged got her feet wet and caught a severe cold. Claim was made for Watson for $1, hotel fare, and 25 cents, paid for the telegram, and $25 additional damages. There was a judgment in favor of Mr. and Mrs. Campbell for $200 and in favor of Mr. Watson for 25 cents. Neill, Justice, said:

"Mr. Watson's cause of action is separate and distinct from that of his coplaintiffs, and was therefore improperly joined with theirs."

The case as reported does not inform us of the nature of Watson's claim, except as to the hotel bill of $1, and 25 cents for transmitting the telegram. The issue of mental anguish is not in the case. The claim of Campbell and wife is based upon the injury to Mrs. Campbell's health, but Watson seems to have made no such claim. In such a case the holding of Judge Neill may have been proper, but we doubt if such would have been the holding had rule 62a (149 S. W. x) been in force. In the Anderson Case it appears that T. W. Anderson was near Hutchins at the Dallas county poor farm serving a sentence imposed for some misdemeanor; that his family resided in the city of Dallas; that his minor son, S. E. Anderson, and the constable in the city of Dallas, wired the manager of the poor farm at Hutchins of the death of one of T. W. Anderson's children and to release him from custody. Neither of these telegrams were delivered to him until the following day, and as the result of such negligence he did not reach Dallas in time to attend the funeral of his child. The suit was filed by T. W. Anderson, joined by his minor son, S. E. Anderson. The decision is by Garrett, presiding justice of the commissioners of the Supreme Court, in which it is said:

"There was no error in sustaining the defendant's plea of misjoinder of parties and causes of action. It is doubtful if any cause of action at all is shown in behalf of the son, S. E. Anderson; but the petition does show a good cause of action in favor of the father. At least, they could not be joined."

The report of the case does not set out the appellant's pleadings, but we may reasonably infer that the father claimed damages for being deprived of the privilege of attending his child's funeral. No such claim could have been made by his minor son, who it appears from a perusal of the case was in Dallas, and, under the facts shown, the holding is correct. The facts in the instant case are altogether different. The brother of the appellees, as their agent, sent the telegram for their benefit. The consideration paid the company for its transmission was paid for their benefit. The failure to deliver the telegram, considered in connection with the telegram itself, is their cause of action. H. & T. C. Ry. Co. v. Hill, 63 Tex. 381, 51 Am. Rep. 642; Westinghouse Elec. & Mfg. Co. v. Troell, 30 Tex. Civ. App. 200, 70 S. W. 324; Planters' Cotton Oil Co. v. Whitesboro Cotton Oil Co., 146 S. W. 225. The damages claimed by each is for mental anguish, growing out of the same transaction or rather cause of action. In Western Union Telegraph Co. v. Norris, 25 Tex. Civ. App. 43, 60 S. W. 982, the father alone sued for damages for mental anguish to himself and his wife because of the negligence of the company in the transmission of a telegram announcing that their son was dying in a distant town. Since any recovery by the wife would be community property, the husband was permitted to recover for the sufferings of his wife in the same action in which he sought to recover damages for his own mental anguish. To the same effect is the holding of Judge Finley in Southwestern Telegraph Co. v. Dale, 27 S. W. 1059, in which it is said:

"Where damages to both husband and wife arises upon the same acts or transaction, recovery of damages sustained by each of them may be had in the same suit."

The case of Western Union Telegraph Co. v. Burris and Wife, 147 S. W. 1173, is one in which the suit is filed by both husband and wife, and in which there was a joint recovery because of nervous shock and physical breakdown on the part of the wife, occasioned by the failure of the company to promptly deliver a telegram sent by the wife to the husband announcing the serious illness of their daughter. The general rule is that the party for whose benefit the telegram is sent may maintain the action. Western Union Telegraph Co. v. Adams, 75 Tex. 531, 12 S. W. 857, 6 L. R. A. 844, 16 Am. St. Rep. 920; Western Union Telegraph Co. v. Coffin, 88 Tex. 94, 30 S. W. 896. It is further held in the last-named case:

"That mental anguish, whether accompanied by injury to the person or not, is a proper element of actual damages; and, when caused by the negligence of the telegraph company in failing to deliver a message, compensation therefor may be recovered by the injured party."

The form of such action is in this state ex contractu rather than ex delicto. El Paso & Northeastern Ry. Co. v. Sawyer, 54 Tex. Civ. App. 387, 119 S. W. 110; Potts v. Western Union, 82 Tex. 545, 18 S. W. 604. In Dunn v. Smith, 74 S. W. 576, it appears that one Harry Smith died of smallpox in the pesthouse of Dallas county; his mother, brothers, and sister contracted with J. E. Dunn & Co., undertakers, to inter the body; that the relatives of the deceased went to the appellant's undertaking establishment, selected a coffin, with glass front, silver handles, etc., at an agreed price of $25, and selected a burial robe at the price of $3, to be delivered at the pesthouse that night; that appellant, instead of delivering the coffin and robe purchased, delivered a cheap pine box coffin and no robe at all; and it is alleged that the box was too small to contain the remains, and that in an effort to crowd the body into the box a portion of the bottom of the box was detached, and the arms and legs of the corpse extended outside the box. By reason of that fact the appellees were prohibited from attending the burial. The appellant, by general and special exception, raised the issue of misjoinder of parties and causes of action. On appeal Rainey, Chief Justice, said:

"The plaintiffs having a joint interest in the contract made by them with the defendant, they were entitled to a joint action for such damages as arose from a breach of the contract. Mental anguish being caused by the breach of said contract, a recovery therefor was authorized, and a joint action by them could be maintained. The plea of abatement on this ground, in our opinion, was not well founded."

In the case of Flanders v. Wood, 83 Tex. 277, 18 S. W. 572, it appears that several architects had submitted to the commissioners' court of Dallas county their several plans and specifications for the erection of a courthouse, and that it was unknown to any of them whose plan would be accepted; that said architects agreed to retire from further contest and let their plans alone compete, and, whichever plan should be accepted, the remuneration accruing to the author of such plans should be shared equally by all of the contestants. The suit was filed against the successful architect by the others to recover under the agreement. Collard, Justice, said:

"The first assignment of error is that the court erred in holding that there was not a misjoinder of parties plaintiff. The question was raised in the court below by exceptions to the petition. There was no error. In a suit to enforce a contract, all persons interested therein are proper parties. It would be a singular proceeding to require each of the parties to bring separate suits against the same defendant, on the same promise, subject to the same defenses. This suit was by two partners to compel the third to account, in the same amount, to each. We know of no authority that requires separate suits in such a case. Creditors holding separate claims against a debtor cannot join as plaintiffs

in the collection of their debts (Blum v. Goldman, 66 Tex. 622, 1 S. W. 899), but that rule does not apply to this case." Moore v. Minerva, 17 Tex. 20; Wilson v. Hampton, 2 Posey Unrep. Cas. 426; Harris v. Warlick, 42 S. W. 356.

It has long been declared by the courts in this state, even before the promulgation of Court of Civil Appeals rule No. 62a (149 S. W. x), that, unless it was shown that an improper joinder of parties plaintiff or causes of action had resulted in harm to the defendant, it would not be ground for reversing the judgment. Hall v. Murphy, 14 Tex. 637; Hartford Fire Insurance Co. v. McLemore, 7 Tex. Civ. App. 317, 26 S. W. 928; Texas, etc., Ry. Co. v. Watkins, 88 Tex. 20, 29 S. W. 232; Dwyer v. Hosea, 1 Posey, Unrep. Cas. 596; Galveston, etc., Co. v. Heard, 91 S. W. 371; Thompson v. Griffin, 69 Tex. 139, 6 S. W. 410; Street Ry. Co. v. Helm, 64 Tex. 149; T. & P. Ry. Co. v. Andrews, 80 S. W. 390; Morris v. Davis, 31 S. W. 851; St. Louis & Southwestern Ry. Co. v. Hengst, 36 Tex. Civ. App. 217, 81 S. W. 833; G., H. & S. A. Ry. Co. v. Heard, 91 S. W. 372; Western National Bank of Ft. Worth v. Texas Christian University, 176 S. W. 1194. It is held by some of the cases above cited that the question of the joinder of causes of action is one within the sound discretion of the trial judge and his ruling will not ordinarily be reviewed on appeal unless it is clear that such discretion has been abused, and such is the holding in Texas Brewing Co. v. Bisso, 50 Tex. Civ. App. 119, 109 S. W. 270. The same rule obtains as to the consolidation of causes of action though technically irregular. Harle v. Langdon, 60 Tex. 585; Lesley v. Elliott, 26 Tex. Civ. App. 578, 64 S. W. 1037; Blackman v. Housels, 35 S. W. 511; Moore v. Francis, 17 Tex. 28; Young v. Gray, 65 Tex. 99. It has been the policy of the Texas courts, under our liberal procedure, to discourage a multiplicity of suits and to favor a joinder of parties and causes of action when injury will not likely result. Appellant has shown no injury in this case; but, on the contrary, we may presume that in the matter of costs the joinder has resulted in pecuniary benefit to the company.

[3, 4] Appellant further assigns as error the action of the court in overruling its exception numbered D, to the following allegation in the petition:

"Plaintiffs say that R. E. Morrow resided in the town of Wellington and that, had defendant used ordinary diligence and care in transmitting said message, it would have been received in the town of Wellington by 10 o'clock a. m., December 5, 1916, where it would have been promptly delivered to the said R. E. Morrow, * * * and that if said message had been so delivered plaintiffs could and would have left Wellington on the afternoon of December 5th and could and would have reached Waelder, Tex., on the evening of December 6th, by the use of the railway facilities connecting the two points."

In its answer appellant admits that appellees could have reached Waelder on Friday December 8th. However, we will consider the exception to that part of the pleading quoted, which urges that the allegation is merely a conclusion of the pleader and insufficient, because it fails to state by or over what lines of transportation they could have reached Waelder, or what facilities or agencies they would have availed themselves of in making the said journey.

Under another assignment appellant urges that the court erred in permitting the plaintiffs and other witnesses to give in detail the route traveled and necessary to be traveled in going from Wellington to Waelder and in testifying as to the schedules of the several trains with the connections, delays, and changes en route. Both assignments present practically the same question and will be considered together. Strict application of the rules of pleading would possibly require appellees to allege the particular roads over which they would have traveled and show the train schedules and connections, by means of which they could have reached Waelder in time for the funeral (Western Union Tel. Co. v. Forest, 157 S. W. 204), though the contrary is held in this state (Western Union Telegraph Co. v. Rowe, 44 Tex. Civ. App. 84, 98 S. W. 228). It was plaintiffs' duty, of course, to travel over the route which would enable them to reach Waelder in the shortest time. They could not select a more circuitous line of travel and hold appellant liable. The pleading is notice to appellant that appellees would have made use of the railway facilities connecting the two towns, and appellant could easily have obtained all the information necessary for its defense by reference to the usual and common sources of information as to trains and schedules. Having alleged that appellees would travel by rail, appellant knew that the trip would not be made by auto or other means of conveyance. It does not appear that appellant has been injured by the court's ruling upon the exception to the pleading or surprised by the admission of the evidence. The errors therefore are harmless.

[5, 6] Under the third assignment it is urged that, the telegraphic message being an interstate message, the rights of appellees are controlled by the Interstate Commerce Act, and, because of the contract printed on the back of the message blank limiting the sum to be recovered to $50, appellees were not entitled to recover, if at all, any amount exceeding the sum fixed. It is held in Western Union Telegraph Co. v. Piper, 191 S. W. 817, that the Act of June 18, 1910, c. 309, 36 Stat. 544 (U. S. Comp. St. 1913, § 8563), amending the Interstate Commerce Act, classifying telegraph companies as common carriers, does not subject such companies to the operation of wholly inapplicable regulations originally designed to govern carriers of altogether a

different character. So that the federal statute has no application to the rules of decision in the several states governing controversies growing out of the negligence of the company in transmitting messages. It is not shown here that appellees had any notice, as required by the Interstate Commerce Act, of any such regulation, and they are not bound by the stipulation found on the back of the blank.

[7] It is contended under the sixth assignment that because F. F. Foster, the sender of the telegram, acted as the agent of appellees, in notifying them of the condition of their father, he was their agent for all purposes, and they are bound by his refusal to delay the funeral until their arrival. A general agency to do certain things cannot be implied from the fact that an assumed agent's special act in one particular has been accepted. Foster was the agent of his sisters only in a special sense and in so far as they had adopted his acts. The jury found that Foster was not guilty of contributory negligence in the matter of burying the deceased when he did, and that he acted on his own responsibility, and not as the agent of appellees, in doing so. We think this finding is correct.

[8] Even though the definition of "contributory negligence" given by the court is erroneous, it is not ground for reversal, since, in so far as the rights of appellees are concerned, there is no question of contributory negligence in the case.

It is unnecessary to consider the remaining assignment. There is no reversible error in the record, and the judgment is affirmed.